**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

_____
              )
 In re:          )
              ) Chapter 12
   HENRY A. SARAFIN   ) Case No. 12-30221-HJB
   TESTAMENTARY TRUST, )
              )
      Debtor    )
_____ )

**<u>MEMORANDUM OF DECISION</u>**

Before the Court for determination is an "Objection to the Secured Claim of People's United Bank by Merger With Chittenden Trust Co., and Request to Determine Reasonableness of Costs" (the "Objection") filed by the Henry A. Sarafin Testamentary Trust, the Chapter 12 debtor-in-possession in this case (the "Debtor"). Through the Objection, the Debtor seeks a determination that the remaining balance, including attorney's fees, of the secured claim asserted by People's United Bank (the "Bank") is limited to the amount set forth in the Debtor's confirmed Chapter 12 plan (the "Plan"). In addition, the Debtor questions the reasonableness of the Bank's asserted fees. The Bank argues that its attorney's fees are not limited by the provisions of the Plan and are reasonable as necessitated by the nature of the case and the Debtor's habitual payment arrearages. Accordingly, the Court must determine whether the Plan has any preclusive effect on the amount of the Bank's secured claim and whether the attorney's fees sought by the Bank are reasonable and necessary.

1

I.    FACTS AND TRAVEL OF THE CASE

The material facts are not in dispute. The Debtor filed a petition for relief under Chapter 12 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code") on February 17, 2012.[1] The Debtor owns real estate in West Chesterfield, Massachusetts, consisting of a residential dwelling, a barn, and approximately 70 acres of land (the "Premises"). The Debtor is indebted to the Bank under an adjustable rate note (the "Note") dated June 1, 2003 in the original principal amount of $201,900.00. The Note provides that, upon default, the Bank shall have the right to collect costs and expenses related to the default, including reasonable attorney's fees.[2] The Note is secured by a first priority mortgage encumbering the Premises (the "Mortgage"). The Mortgage also provides that, upon default, the Bank is entitled to reimbursement of the fees incurred in connection with the default, including attorney's fees.[3]

---

[1] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

[2] Paragraph 7(E) of the Note states:

> If the Note Holder has required me to pay immediately in full as described above [upon default], the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Bank's Resp. to Debtor's Obj., Ex. A, April 13, 2015, ECF No. 119.

[3] Paragraph 14 of the Mortgage states, in relevant part:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees.

Bank's Resp. Ex. B.

2

The Debtor's Chapter 12 Plan was confirmed on March 31, 2014. Under the terms of the Plan, the Bank would be paid a total amount of $168,876.36 on account of its secured claim: $111,600.00 from the net proceeds of funds received by the Debtor pursuant to a sale of rights under the Massachusetts Agricultural Preservation Restriction Program (the "APR Program"; the "Preservation Payment"), with the balance of $57,276.36 to be paid over 15 years at 5% interest. Additional escrow payments would be paid to the Bank on account of real estate taxes. Apart from the new 15-year term and interest rate, all other terms set forth in the original Note and Mortgage would remain in effect. A footnote to the paragraph describing the treatment of the Bank's claim further provided:

> To the extent any party disagrees with this amount, and they cannot resolve otherwise, an objection to this amount must be filed within thirty (30) days of an order confirming this plan, although payments will commence based upon the above amount. [Very sic].

Debtor's Fourth Amended Chapter 12 Plan, Feb. 19, 2014, ECF No. 76.

The Bank has not filed a proof of claim in this case. However, in a motion seeking relief from the automatic stay[4] filed on February 3, 2015, the Bank asserted an outstanding balance owed of $68,546.02, comprised of principal, interest, late fees and other charges pursuant to the Note, plus costs and attorney's fees. The Debtor filed its Objection on February 9, 2015. According to the Debtor, the amount claimed by the Bank in excess of the Plan's listed balance was likely the result of unreasonable or unnecessary

---

[4] This was the third motion for relief filed by the Bank. The first was filed in 2013 and listed a postpetition arrearage of $176,949.83. Bank's Mtn. for Relief from Stay, April 22, 2013, ECF No. 58. The second motion for relief listed the total postpetition arrearage as $68,110.68. Bank's Mtn. for Relief from Stay, July 8, 2014, ECF No. 92. The Bank withdrew that motion as the Debtor made a partial payment on the day of the hearing and made a further payment within the time frame set by the Court to cure the arrearage. See Bank's Mtn. for Relief from Stay, ¶ 10, Feb. 3, 2015, ECF No. 108.

legal fees charged by the Bank. The Bank filed a response on April 13, 2015, and the Debtor filed a supplementary response on April 21, 2015. Following an evidentiary hearing, this Court took the matter under advisement.

II.     POSITIONS OF THE PARTIES

The Debtor argues that the outstanding amount owed to the Bank should be limited by the terms of the Plan, which provides in Section 3(A) that a total of $168,876.36 is to be paid on account of the Bank's secured claim (the $111,600.00 Preservation Payment and a remaining secured claim of $57,276.36). Noting that the Preservation Payment actually ended up being $113,864.00, the Debtor argues that the remaining balance should be limited to $55,012.36. According to the Debtor, the additional $13,533.66 claimed by the Bank results from the Bank's unreasonable or unnecessary legal fees. The parties do not dispute that the Bank is oversecured. Therefore, the Debtor reasons, there was little or no risk that the Bank would not be paid in full, and the Bank's multiple relief from stay motions were unnecessary. Further, the Debtor argues that, regardless of whether the Bank's fees were reasonable, the failure of the Bank to timely object to the amount to be paid to the Bank under the Plan now precludes the Bank from demanding a higher amount.

The Bank maintains that its asserted fees are reasonable and permissible under the terms of both the Note and the Mortgage, and that it provided the Debtor with an accounting (via email) of the amount due after application of the Preservation Payment. The Bank insists that this case has necessitated more of its counsel's involvement than usual given that (1) the Plan was amended four times prior to confirmation and (2) the Debtor repeatedly failed to make timely payments to the Bank necessitating three motions

for relief from the automatic stay and its counsel's attendance at the hearings on those motions. Further, the Bank notes that it has incurred additional fees in responding to the Objection.

With respect to the Debtor's contention that it is now too late to adjust the amount of its secured claim because it failed to timely object to the Plan, the Bank contends that it was impossible for the Bank to determine the balance that would be owed after application of the Preservation Payment because those proceeds were not received until *after* the 30-day objection period contemplated by the Plan. In addition, the Bank notes that it emailed Debtor's counsel an accounting of the balance remaining after application of the Preservation Payment and a breakdown of how the Preservation Payment was applied and received no objection from the Debtor.

III.    DISCUSSION

The Court first begins with the question of whether the doctrines of issue or claim preclusion bar any change to the amount of the Bank's claim inasmuch as an answer in the affirmative would essentially render the reasonableness inquiry moot.

A.    **Issue or Claim Preclusion of the Confirmed Chapter 12 Plan**

Under § 1227(a), the provisions of a confirmed Chapter 12 plan bind the debtor and each creditor. But while it is well-settled that a confirmed plan has preclusive effect with regard to the *treatment* of a claim (i.e. secured vs. unsecured), see, e.g. Burrell v. Town of Marion (In re Burrell), 346 B.R. 561 (1st Cir. BAP 2008); In re Watkins, 240 B.R. 735 (Bankr. C.D. Ill. 1999)), the same cannot be said with respect to the *amount* of a claim. For example, in In re Euliano, 422 B.R. 177, 189 (Bankr. D. Mass. 2010), this Court held that although a confirmed Chapter 13 plan may have a preclusive effect as to

5

the treatment of a creditor's claim, that preclusion did not extend to the *amount* of the claim where the deadline to file a claim postdated confirmation of the plan.  Indeed, as this Court pointed out in Euliano, the creditor would otherwise be robbed of its right to file a claim within the deadline prescribed by Federal Rule of Bankruptcy Procedure 3002(c) and participate in the distribution, correspondingly implicating the creditor's right to due process.

    Here, the Debtor's Plan provided that the Bank's claim would be treated as secured, with a lump sum payment to be made imminently from an identified source and the remainder to be paid over a term of 15 years at 5% interest.  That treatment was and is binding on both the Debtor and the Bank.  But consistent with the concern elucidated in Euliano, the balance due after application of the Preservation Payment *could not* have been determined at the time of confirmation as the payment was not fixed and had not yet been made.  In fact, the proceeds were not received by the Bank until approximately 45 days post-confirmation and exceeded the sum predicted by the Debtor in the Plan.  Accordingly, in the instant case, the Plan could not possibly have preclusive effect as to the ultimate *amount* of the Bank's oversecured claim – including, notably, the Bank's attorney's fees and costs associated with legitimate and necessary post-confirmation collection activities.[5]  In any event, the Court rules that the language in the footnote of the

---

[5] The Court pauses here to note that counsel for debtors often complain that they are forced to guess the amount of a secured party's claim, making modification of the Chapter 13 plan a regular occurrence. While it may be difficult for a debtor to determine the appropriate amount of a claim to be included in a plan, particularly where, as here, the creditor is not *required* to file a proof of claim under Federal Rule of Bankruptcy Procedure 3002, debtor's counsel should put forth at least *some* good faith effort to determine a creditor's asserted claim.  And where time permits, debtor's counsel should also consider the avenue and remedies set forth in Massachusetts General Laws 183 § 54D.

Plan purporting to set a cap on the amount of an oversecured creditor's secured claim was insufficient to bind the Bank and the Bank was free, if consistent with other provisions of the Bankruptcy Code, to include additional fees and costs in the ultimate determination of its secured claim.

  B.  **Reasonableness of the Bank's Fees**

A secured creditor may recover fees, costs, and other charges pursuant to § 506(b) provided that: (1) the creditor is oversecured; (2) the charges are provided for in the agreement or statute under which the claims arose; and (3) the fees, costs, or charges are reasonable.[6] <u>1095 Commonwealth Corporation and Bahig F. Bishay v. Citizens Bank of Mass. (In re 1095 Commonwealth Corp.)</u>, 236 B.R. 530 (Bankr. D. Mass. 1999). The creditor has the burden of persuasion for each of those requirements. With respect to attorney's fees, the creditor must provide supporting documentation demonstrating that the claimed fees are authorized by the agreement and were necessary and reasonable. <u>In re Woods Auto Gallery, Inc.</u>, 379 B.R. 875 (Bankr. W.D. MO 2007).

The lodestar method is generally used to determine attorney's fees. In short, an attorney's reasonable hourly rate is multiplied by the number of hours expended. In assessing the reasonableness of those fees, courts consider various factors including whether the expenses fall within the scope of the agreement, whether the fees and costs

---

[6] Specifically, § 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

were reasonably calculated to protect the creditor's interest, and whether the creditor took action that similar creditors would have taken. In re Circle K Corp., 141 B.R. 688, 692 (Bankr. D. Ariz. 1992). The court may also examine the time and labor involved, whether there were any novel or difficult questions involved, the amount of skill necessary to perform the services, the amount customarily charged in the community, whether the rate was a flat fee or based on expected hourly work, whether extraordinary results were obtained, whether the relationship between the attorney and the client is ongoing or limited, whether the case is undesirable, and the amount awarded in similar cases in the division. In re Smith, 230 B.R. 437, 439 (Bankr. N.D. Fla. 1999).

There is no dispute that the Bank here is an oversecured creditor. And both the Note and Mortgage allow for the recovery of attorney's fees. Accordingly, the only remaining question is whether the Bank has provided sufficient supporting documentation to demonstrate that its claimed fees were reasonable.

First, the Court finds that the Bank has not only provided a sufficient accounting of its fees in response to the Debtor's Objection, but previously provided that accounting to Debtor's counsel. In an e-mail to Debtor's counsel dated May 21, 2014, the Bank acknowledged receipt of the Preservation Payment, provided a breakdown of its calculation regarding the balance owed, and explained how Preservation Payment was applied. And on February 27, 2015, the Bank provided even further detail to Debtor's counsel via an email that contained (in addition to the breakdown previously described) a billing history from Bank's counsel listing its postpetition fees and costs broken down by date with descriptions of the services performed, as well as invoices from the attorney and auctioneer hired to handle its (canceled) prepetition foreclosure sale. There is no

8

question that both the Debtor and this Court have been provided with an adequate accounting of the Bank's claimed legal fees and expenses.

But the Debtor argues that the Bank failed to exercise some requisite "discretion" in prosecuting this case given its equity cushion in the Premises. At trial, Debtor's counsel questioned different entries related to Bank's counsel familiarizing himself with the case, filing objections to the Debtor's plans, filing motions for relief from the automatic stay, and various administrative tasks. In support of its position, the Bank noted that the case was atypical in that it involved four amended plans and filing multiple motions for relief from stay on account of the Debtor's habitual lateness in making payments.

This Court finds that the fees in question fall within the scope of the terms of the Note and Mortgage entitling the Bank to attorney's fees incurred in connection with the Debtor's default. And, based on the facts of the case, it would be difficult for this Court to conclude that competent counsel for a similarly situated creditor would have acted differently.

First, it is relevant to note that this case, filed under Chapter 12, would have involved a substantial degree of uncertainty for any secured party and its counsel. For some time, the source of funding for the Debtor's Plan was unknown. At one point, the Debtor entertained allowing a cell phone service provider to construct a cell tower on the Premises. Later, the idea of the APR Program was introduced. Given the rarity of Chapter 12 case filings in this District and his lack of familiarity with the APR Program, it is not unreasonable that Bank's counsel would spend time getting acquainted with the applicable law in order to properly protect the Bank's interest. And notwithstanding the Debtor's eventual success in securing the Preservation Payment, the ability of the Debtor

to qualify for the APR Program was uncertain for some period of time. It is also not unreasonable that time would be spent reviewing multiple versions of the Debtor's Plan.

Second, given the frequency of the Debtor's postpetition payment defaults, the Court finds the argument that the Bank should not have filed its motions for relief from the automatic stay somewhat bizarre (indeed, akin to the child who kills his parents and seeks the mercy of the court because he is an orphan). At trial, Debtor's counsel stated that he showed some restraint with respect to his fees and suggested that the Bank should have followed suit. While Debtor's counsel is to be complimented on the accommodation he showed to his client and is correct that a lender cannot treat a debtor's obligation to the lender as a blank check, there is no legal requirement that a lender subsidize the collection of a loan. The Court takes judicial notice that the hourly rate of $250.00 charged by the Bank's counsel was equal to or less than the amount customarily charged by an attorney with similar knowledge and experience in western Massachusetts. And the Court has no quarrel with the amount of time expended by Bank's counsel in his efforts to protect the Bank's interests in this case. In sum, this Court finds that the legal fees and costs charged by the Bank were authorized by the loan documentation and reasonable when measured by type, rate and amount.

IV.    CONCLUSION

For all of the foregoing reasons, the Debtor's Objection to the Secured Claim of People's United Bank is OVERRULED and the Bank's claim for its attorney's fees and expenses are found to be reasonable. An order in conformity with this Memorandum shall issue forthwith.

DATED: September 30, 2015                    By the Court,

                                             _____

                                             Henry J. Boroff
                                             United States Bankruptcy Judge